GLANCY PRONGAY & MURRAY LLP
LIONEL Z. GLANCY (#134180)
MARC L. GODINO (#182689)
MARK S. GREENSTONE (#199606)
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile:  (310) 201-9160
E-mail: mgodino@glancylaw.com

*Counsel for Plaintiff*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEBASTIEN DUFORT, Individually and On Behalf of All Others Similarly Situated,<br><br>                    Plaintiffs,<br><br>          v.<br><br>VIZIO, INC., a California Corporation, and COGNITIVE MEDIA NETWORKS, INC., a Delaware Corporation,<br><br>                    Defendants. | Case No.:<br><br><br>**CLASS ACTION COMPLAINT**<br><br><br>**<u>JURY TRIAL DEMANDED</u>** |

Sebastien DuFort ("Plaintiff"), individually and on behalf of all others similarly situated, file this Class Action Complaint against Defendants Vizio, Inc. ("Vizio") and Cognitive Media Networks, Inc. ("Cognitive") (collectively "Defendants") and allege the following based on personal knowledge, the investigation of counsel, and information and belief.

## INTRODUCTION

1.     Smart TVs come with the capability to connect to the Internet so that owners can access movies, shows and music online through various applications installed on the TVs.

2.     Vizio has sold millions of smart TV's equipped with the company's Internet Apps (VIA or VIA Plus) smart platform, with its tracking algorithm called "Smart Interactivity."  Without the smart TV's user's knowledge, Smart Interactivity allows Vizio to keep track of users' viewing habits. Vizio has the capability of sharing that data with advertisers, and can do so without camouflaging a user's Internet Protocol (IP) address.  Smart Interactivity is turned on by default when the Smart TV is first turned on and the user who wants to avoid being tracked has to opt-out; assuming the user has the technical savvy to know that his/her viewing habits are being tracked.

3.     This aforementioned information, collected without the user's consent, is sold by the Defendants to third parties.

4.     Plaintiff alleges that Defendants' collection, dissemination and profiteering from this unauthorized collection of personal information violated federal and state laws and the privacy rights of consumers.  This lawsuit seeks both to prevent Defendants from continuing to track Vizio Smart TV owners without their consent, and seeks damages for the owners of Vizio Smart TVs.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1332(d) because the amount in controversy exceeds $5 million, exclusive of interest and costs, and members of the proposed classes are citizens of different states than Defendants.

6.     This Court has personal jurisdiction over Defendants because they are headquartered in California and registered to conduct business in California, and has sufficient minimum contacts with California.

7.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District and Defendants conduct substantial business in this jurisdiction.

## PARTIES

8.     Plaintiff Sebastien Dufort is a resident of Hinsdale, Illinois.    In September, 2015, Plaintiff purchased a Vizio E32-C1 Smart TV from Best Buy

located in Downers Grove, Illinois.

9.     Defendant Vizio, Inc. is a California corporation headquartered at 39 Tesla, Irvine, California 92618. Vizio conducts business in this district, and throughout California and the nation.

10.     Defendant Cognitive Media Networks, Inc., is a Delaware corporation registered to do business in Illinois. Its principal executive offices are located at 39 Tesla, Irvine, California 92618.

## FACTUAL ALLEGATIONS

11.     Defendant Vizio is a consumer electronics company, generating billions of dollars in annual revenues.  Defendant's products are sold in over 8,000 stores nationwide.

12.     In late 2015, Vizio purchased a controlling interest in Cognitive for approximately $50 million.

13.     Vizio attributes a substantial portion of its net income to sales of its Smart TVs.  Visio Smart TVs allow users to stream movies, television shows, and other internet and popular application-based content.   Vizio Smart TVs, with Cognitive's software installed, are able to connect to the user's Wi-Fi internet network through the Vizio Internet App and the Vizio Internet App Plus software services.   With these software, the user can gain access to internet-based

providers, such as Netflix, Amazon Instant Video, YouTube, and Hulu, for example.

14.     Vizio pre-installed Smart Interactivity software on all Vizio Smart TVs, including the "Reference Series," "P-Series," "M-Series," "E-Series," and "D-Series" product lines.

15.     Smart Interactivity allows Vizio to track users' activity on their Smart TVs.  Smart Interactivity searches a user's Smart TV for information about a user's home network.  This software collects and instantly transmits network information, including IP addresses, product serial numbers, device nicknames, region and language settings, online services used, and zip codes.

16.     Smart Interactivity software also records the presence of other devices connected to the home network and obtains information from those devices.  Smart Interactivity then instantly transmits this information to servers ultimately controlled by Vizio.

17.     Vizio claims that Smart Interactivity encrypts, to an extent, the information which is transmitted from Smart TVs to the Vizio servers. Vizio refers to this collection and transmission of private user information as "Inscape data services."

18.     Vizio refers to the information it surreptitiously collects as "Non-Personal Information," which Vizio describes as "data in a form that does not, on

its own, permit direct association with any specific individual."[1]  This includes, but is not limited to, the IP addresses products that are assigned to users' internet-connected devices, their zip codes, the online services they visit, information about their Vizio products (such as MAC addresses, product model numbers, hardware and software versions, chipset IDs, and region and language settings), as well as information about the products users request or purchase, the presence of other devices connected to their local networks, and the number of users and frequency of use of Vizio products and services.[2]  Vizio also collects "anonymous information regarding customer activities on our websites, on Internet-connected products and services, and on Vizio's Internet store.[3]

19.    Although Vizio claims that the information collected is non-personal, technical experts have challenged this characterization.  For example, Extreme Tech's website contains the following excerpt from an article authored by Joel Hruska on November 10, 2015.

> "Non-personally identifiable information" is a contradiction in terms, particularly when the companies in question have access to mobile data.  The entire point of Vizio's advertising push is to sell this information to companies so they can track you on multiple devices.  In order to do that, they're going to need to find those devices.  If an advertiser can pick up on the fact that you watch, say, Arrow in order to send you ads

---

[1] http://www.vizio.com/privacy (*See* text under heading: "What information we collect") (accessed Feb. 2, 2016).

[2] *Id.*

[3] *Id.*

enticing you to watch The Flash, then that advertiser effectively knows who you are.[4]

20.     In addition to technical experts, the National Institute of Standard and Technology specifically characterizes IP addresses as constituting personally identifiable information.[5]

21.     After secretly collecting data from its customers, Vizio sells the consumer's IP address, and all information obtained therefrom, to third party advertisers and data aggregators, who may then target individual consumers not only through their Smart TVs, but also through any other devices that were connected to the user's Wi-Fi network.  With the consumers' personal information, the third parties either make tailored advertisements to the users, or sell aggregated data to other companies.

22.     Vizio did not disclose the existence of this tracking software to consumers on the product's packaging, during the setup of the Smart TV, or in the product's advertising; yet, this software is enabled by default.  Similarly, Vizio Smart TVs do not alert consumers while or before beginning to watch a program

---

[4] Joel Hruska, "Vizio TVs Caught Tracking Viewing Habits, Selling Data to Advertisers." ExtremeTech (Nov. 10, 2015) (available at http://www.extremetech.com/internet/217762 viziotvs-caught-tracking-viewing-habits-selling-data-to-advertisers) (emphasis in original).

[5] National Institute of Standards and Technology, U.S. Dept. of Commerce, "Guide to Protecting the Confidentiality of Personally Identifiable Information" (April 2010), (available at http://csrc.nist.gov/publications/nistpubs/800-122/sp800-122.pdf).

or internet content that their Smart TVs are actively tracking them and that the information collected will be disseminated for profit.

23.     Vizio merely provides consumers with information on its website on how to turn off the tracking; however, consumers must actively seek out this information, assuming they somehow discover the software's existence.[6]

24.     Defendants do not disclose that the Smart TVs are pre-installed with Smart Interactivity during setup, in advertising, or anywhere else.  Defendants also do not disclose to consumers that they are being monitored or ask consumers to agree to any terms or privacy policy relevant to Smart Interactivity.

25.     Rather, Defendants buried any mention of Smart Interactivity to deceptively named and obscure television settings and menus.  Defendants did this because they knew that no consumer would uncover the purported disclosures without aid.  For example, Defendants hid their privacy policy that purportedly governs how the Smart TVs collect data and how Defendants use the data in a location that requires the consumer to first load the settings menu, navigate to "System," then to "Reset & Admin" (which Defendants describe as the location to "Reset the TV to factory defaults. Administrative tasks are available here."), and then Vizio's Privacy Policy.

_____

[6] "How to turn on or off Smart Interactivity," http://www.vizio.com/smartinteractivity?country_code=US (last visited January 11, 2016).

26.     Nevertheless, the buried privacy policy is further concealed by Defendants' choice to make their consumers attempt to read the policy in small-sized font, low contrast (white text against a light blue background), on only a small fraction of the total screen, requiring consumers to stand inches away from their TVs to view complex and dense boilerplate text.  It can be inferred, then, that although Defendants market their Smart TVs as being high-definition and having great fidelity, they purposefully made the privacy unreadable.

27.     In addition to violating consumers' privacy, Vizio Smart TVs have actually placed its users' Wi-Fi network at risk of cyberattack.  An investigation by Avast has confirmed that Defendants' tracking software is easily manipulated to unencrypt the data that it has collected.  Avast also found that there are minimal barriers between the Smart TV and other devices on the local Wi-Fi network.  This lack of safeguards could enable a hacker to use the Smart TV "as a launching pad for malware or other types of malicious scenarios."[7]

28.     Despite Vizio's expressed concerns over its policies' legality, it has continued to collect and disseminate consumers' personal information without the consumers' consent in violation of statutes and consumers' privacy rights.

---

[7] "Vizio Smart TV Hacked to Give Attackers Access to Home WiFi Network: Avast confirms the recent Vizio Smart TV snooping scandal" http://news.softpedia.com/news/vizio-smart-tv-hacked-to-give-attackers-access-to-home-wifi-network-496085.shtml (last visited January 13, 2016).

CLASS ACTION COMPLAINT
- 8 -

29.     Defendants' improper data collection policies contrast with those of its competitors, like Samsung and LG Electronics, who only track users' viewing habits if their customers affirmatively choose to turn the feature on.  In contrast, Vizio collects its customers' data automatically, requiring consumers to turn the feature off.[8]

30.     Defendants knew that consumers would connect their Smart TV to their private home networks, which are typically protected by a confidential security key or password.  Once inside the private home network, Defendants exploited that access to scan for all devices connected to each consumer's home network.  Through the scan, Defendants' Smart TVs obtain information about these devices, including product names, model numbers, and sensitive data like product serial numbers and device identifiers.

31.     Defendants' Smart TVs can also obtain the personalized names of computers, devices' unique addresses, and details about consumers' wireless internet networks.  This information is usually protected behind consumers' internet firewalls and home network privacy settings, and only trusted devices have access to consumers' private networks.

32.     As alleged above, Vizio admits that it discloses information collected by its Smart TVs to various third parties.  Defendants target advertisements on

---

[8] https://www.propublica.org/article/own-a-vizio-smart-tv-its-watching-you.

Smart TVs by compiling information collected through the Smart TVs and contracting with data brokers to "enhance" the information.  By contracting with data brokers, Defendants obtain information about the individuals watching particular programs and media, including their names, addresses, other demographic information, and likely more.  Vizio provides as much identifying information about its consumers to the data brokers, who then match and link that information to their database of consumers.   The broker then appends any information that it has to the original received data, sending the "enhanced" data back to Vizio.  Defendants then disclose, for profit, certain of that "enhanced" information to media and data analytics companies, amongst others.

33.   As a result of the above, Vizio has and continues to invade the protected privacy rights of millions of consumers by unlawfully collecting, selling, and sharing their personal information and viewing histories without prior consent or express disclosure.

## CLASS ACTION ALLEGATIONS

34.   Plaintiffs bring these claims pursuant to Federal Rule of Civil Procedure 23 on behalf of classes of similarly situated persons, which they propose to be defined as follows:

a. **Nationwide Class**:  All individuals in the United States who purchased a Vizio Smart TV with Smart Interactivity capability and Automatic Content Recognition software pre-installed.

b. **Illinois Sub-Class**:  All individuals in the state of Illinois who purchased a Vizio Smart TV with Smart Interactivity capability and Automatic Content Recognition software pre-installed.

35.    Excluded from the above Class and Sub-Class are governmental entities, Defendants, any entity in which Defendants have a controlling interest, and Defendants; officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns.  Also excluded from the Class and Sub-Class are any judge, justice, or judicial officer presiding over this matter, and the members of their immediate families and judicial staff.

36.    **Numerosity**.  The proposed Class and sub-class contains thousands of individuals dispersed throughout the United States and throughout individual states.  Joinder of all members is impracticable.  Class members can be identified through Defendant's records.

37.    **Commonality**.  Common questions of fact and law exist for each cause of action and predominate over questions affecting only individual class members.  Common questions include:

a.      Whether   Defendants   unlawfully   collected   and   disseminated Plaintiff's and Class members' personal information;

b.      Whether Defendants disclosed to Plaintiff and Class members before the tracking software was activated on their Vizio Smart TVs that their personal information would be collected and disseminated to third parties;

c.      Whether Defendants misrepresented or omitted material facts with regard to the Smart Interactivity feature of the Smart TVs;

d.      Whether Plaintiff and Class members consented to the collection of their personal information and its sale to third parties;

e.      Whether Plaintiff and Class members have a reasonable expectation of privacy in the information collected and disseminated by Defendants;

f.      Whether Defendants' conduct constitutes violations of the laws and statutes asserted herein;

g.      Whether Defendants' conduct was willful, intentional, or knowing;

h.      Whether, as a result of Defendants' conduct, Plaintiff and Class members sustained monetary loss, and, if so, the proper measure of that loss;

i.      Whether, as a result of Defendants' conduct, Plaintiff and Class members are entitled to damages, including compensatory, statutory, or punitive, and the amount of such damages;

j.      Whether, as a result of Defendants' conduct, Plaintiff and Class members are entitled to equitable relief, such as declaratory or injunctive relief;

k.      Whether Defendants were unjustly enriched by their conduct; and

l.      Whether, as a result of Defendants' conduct, Plaintiff and Class members are entitled to an award of reasonable attorneys' fees, prejudgment interest, or costs of suit..

38.    **Typicality**.  Plaintiff's claims are typical of the claims of members of the proposed classes because, among other things, Plaintiff and class members sustained similar injuries as a result of Defendants' uniform wrongful conduct; Defendants owed the same duty to each class member; and their legal claims arise from the same conduct by Defendants.

39.    **Adequacy**.  Plaintiff will fairly and adequately protect the interests of the proposed classes.  His interests do not conflict with the class members' interests.  Plaintiff has retained class counsel experienced in class action litigation to prosecute this case on behalf of the classes.

40.    **Rule 23(b)(3)**.  In addition to satisfying the prerequisites of Rule 23(a), Plaintiff satisfies the requirements for maintaining a class action under Rule 23(b)(3). Common questions of law and fact predominate over any questions affecting only individual class members and a class action is superior to individual litigation. The amount of damages available to individual class members is

insufficient to make litigation addressing Defendants' conduct economically feasible in the absence of the class action procedure. Individualized litigation also presents a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system presented by the legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court.

41. **Rule 23(b)(2)**. Plaintiff also satisfies the requirements for maintaining a class action under Rule 23(b)(2). Defendants have acted or refused to act on grounds that apply generally to the proposed classes, making final declaratory or injunctive relief appropriate with respect to the proposed classes as a whole.

42. **Rule 23 (c)(4)**. Plaintiff also satisfies the requirements for maintaining a class action under Rule 23(c)(4). The claims of class members are composed of particular issues that are common to all class members and capable of class wide resolution that will significantly advance the litigation.

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
**Violation of the Video Privacy Protection Act, 18 U.S.C. § 2710**
**(On Behalf of Plaintiff, the National Class )**

43. Plaintiff incorporates by reference the foregoing allegations as if fully

set forth herein.

44.    Defendants are "video tape service providers" within the purview of the Video Privacy Protection Act (hereinafter "VPPA").   A video tape service provider "engage[s] in the business, in or affecting interstate or foreign commerce, of rental, sale or delivery of prerecorded video cassette tapes or similar audio visual materials."  18 U.S.C. § 2710(a)(4).  Defendants deliver videos and "similar audio visual materials" to consumers through their internet-connected Smart TVs, as well as through many of the pre-loaded applications available on such Smart TVs.

45.    Plaintiff and Class members are considered to be "consumers" under the VPPA, which defines a consumer as a "renter, purchaser or subscriber of goods or services from a video tape service provider[.]"  18 U.S.C. § 2710(a)(1). Plaintiff and Class members purchased Smart TVs manufactured, marketed and distributed by Defendants.

46.    The information that is collected by Defendants via the tracking software constitutes "personally identifiable information" within the purview of the VPPA because the information "identifies a person as having requested or obtained specific video materials or services from a video tape service provider."

47.    Plaintiff and Class members watched movies and television shows on the Vizio Smart TVs.  Upon information and belief, at all times Defendants

tracked Plaintiff and Class members' usage of the Smart TVs and collected information on Plaintiff and Class members' viewing habits, performed scans of Plaintiff and Class members' home Wi-Fi networks, and transmitted this information to Defendants' central databases.

48.     Without Plaintiff or Class members' knowledge or consent, Defendants disclosed and continue to disclose Plaintiff and the Class members' information, including personally identifying information, to unidentified, unauthorized third parties, including advertisers.

49.     Defendants have not attempted to solicit consent from Plaintiff or Class members to collect and disseminate their "personally identifiable information."

50.     Defendants did not provide Plaintiff with an opportunity, in a clear and conspicuous manner, to prohibit disclosure of her personally identifiable information.

51.     Defendants' transmissions of Plaintiff and Class members' personally identifiable information to these third parties constitutes "knowing[] disclosures" of Plaintiff and Class members' "personally identifiable information" to a person under the VPPA. 18 U.S.C. § 2710(a)(1).[9]

---

[9] Such data collection and disclosures are permitted under the VPPA "only in connection with debt collection activities, order fulfillment, request processing and the transfer of ownership."  18 U.S.C. § 2710(a)(2).

52.    Defendants' unlawful disclosures constitute a direct violation of the VPPA.  Thus, Plaintiff and Class members' statutory rights under the VPPA have been violated, and they are, therefore, entitled to all damages, fees, costs, and equitable relief as provided by the VPPA, 18 U.S.C. § 2710(c).  Plaintiff and Class members also specifically seek an injunction prohibiting Defendants from collecting and disseminating personally identifiable information in the future.

**SECOND CLAIM FOR RELIEF**
**Violation of the Electronic Communications Privacy Act, 18 U.S.C. § 2511**
**(On Behalf of Plaintiff, the National Class )**

53.    Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

54.    Defendants, either directly or by aiding, abetting or conspiring to do so, intentionally intercepted or endeavored to intercept and/or procured others to intercept Plaintiff and Class members' electronic communications without Plaintiff's or Class members' knowledge, authorization, or consent in violation of 18 U.S.C. § 2511.

55.    An "electronic communication" is defined in § 2510(12) as any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce. This definition includes television programming.

56.     Defendants, either directly, indirectly, or by conspiring to do so, intentionally used or procured to be used a device to intercept the above-referenced electronic communications of Plaintiff and Class members via software installed on their Smart TVs as alleged above.

57.     Through the installing and enabling of ACR tracking software on Vizio Smart TVs, the collection of communications, and the provision of services to permit the illegal interception and transmission of electronic communications as alleged herein, Defendants engaged in a course of conduct with the intention of intercepting communications of Plaintiff and Class members.

58.     Defendants violated 18 U.S.C. § 2511(1)(d) by intentionally using or endeavoring to use, the contents of Plaintiff and Class members' electronic communications, knowing or having reason to know that the information was obtained through the interception of Plaintiff and Class members' electronic communications.  Neither Plaintiff nor Class members authorized or consented to Defendant's interception of their electronic communications.

59.     As a result, Plaintiff and Class members have suffered harm through the interception, retention, and dissemination of their personal communications and information.

60.     Plaintiff and Class members are authorized to bring a private cause of action pursuant to 18 U.S.C. § 2520.

61.     Plaintiff and Class members seek declaratory and equitable relief, disgorgement of profits, and statutory damages of the greater of $10,000.00 or $100.00 per day for each day of violation, actual and punitive damages, and reasonable attorney's fees and costs.

### THIRD CLAIM FOR RELIEF
### Unjust Enrichment
### (On Behalf of Plaintiff and the National Class, or, in the alternative, the Illinois Class)

62.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

63.     Plaintiff and Class members conferred a benefit upon Defendants in the form of the purchase price of the Smart TVs and in the value of the personal viewing history and other information collected by Defendants.

64.     The benefit is easily measurable as the Nielsen Company, a market leader in the measuring of program viewership and demographics, pays consumers approximately $10.00 for one-time access to their video viewing records.[10]

_____

[10] Nielsen TV Diary | Frequently Asked Questions, tvdiary.nielsen.com/content/panel/tvdiary7 -en-feb2014/faq.html (last visited January 12, 2016) ("The people who plan and schedule television programs want to know what households like yours are watching.  Unlike a newspaper or magazine, where the copies sold can be counted, there is no simple way to know how many people are watching a certain television program.  Nielsen estimates the audience of TV programs with the information gathered from households like yours," and that "[t]he money enclosed with the diary is a thank you in

65.    Defendants have appreciated the benefits conferred and have capitalized on this by selling the consumers' information to third parties for Defendants' monetary gain.

66.    The benefit is measurable because Defendants systematically, through carefully designed computer programs and calculations, commoditized and packaged Plaintiff and Class members' private information and sold it to third parties.

67.    Defendants' acceptance and retention of the benefits would be unjust because this information collected by Defendants contains personally identifiable information, which Plaintiff and Class members did not and would not authorize Defendants to gather and disseminate without being appropriately compensated, or without, at a minimum, having providing their informed, prior consent to Defendants.

68.    Defendants' retention of the monetary gains would violate the fundamental principles of justice and equity.

69.    As a direct and proximate result of Defendants' retention of the non-gratuitous benefits conferred by Plaintiff and Class members, Defendants have been unjustly enriched.

---

advance for filling out and returning your diary.  We truly appreciate your participation.").

70.     Accordingly, Plaintiff and Class members seek disgorgement and restitution of any money Defendants have received as a result of the conduct alleged herein.

## FOURTH CLAIM FOR RELIEF
### Fraud by Omission
**(On Behalf of Plaintiff and the National Class, or, in the alternative, the Illinois Class)**

71.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

72.     Defendants concealed, suppressed, or omitted a material fact concerning Vizio Smart TVs, to wit, the existence of the Smart Interactivity software that tracks and collects the users' information and viewing history as well as information from other devices that are connected to the user's Wi-Fi network.

73.     Defendants were under a duty to Plaintiff and Class members to disclose that the Smart TVs contained the pre-enabled tracking software due to the following:

74.     Defendant Vizio, as the manufacturer, was in a superior position to know of the existence of the pre-enabled tracking software on Vizio Smart TVs;

75.     Both the Video Protection Privacy Act and the Electronic Communications Privacy Act prohibit the collection, interception, disclosure, and/or transmission of the information at issue without the prior, informed consent

of Plaintiff and the Class members or the opportunity, given in a clear and conspicuous manner, to prohibit the disclosure;[11]

76. Plaintiff and Class members could not reasonably have been expected to learn or discover that Vizio included pre-enabled tracking software on its TVs;

77. Vizio should have known that Plaintiff and Class members could not reasonably have been expected to learn or discover that Vizio included pre-enabled tracking software on its TVs, and in fact, Vizio took steps to actively conceal the tracking software; and

78. Vizio should have known that the existence and nature of the pre-enabled software was a material fact that influenced the purchasing decision of Plaintiff and Class members.

79. Defendants intentionally concealed, suppressed, or omitted the material facts described above with the intent to defraud Plaintiff and Class members because Defendants knew or should have known that Plaintiff and Class members would not have purchased the Smart TVs if the existence of the software were disclosed.

80. A significant part of Defendants' marketing of Vizio Smart TVs was informing consumers that the TVs could be connected to the internet through a home network. Defendants deliberately, however, chose to omit the fact that

---

[11] *See* 18 U.S.C. § 2511.

connecting to the internet in this way would allow Defendants to track, record, and disseminate for profit the personal viewing histories and personally identifiable information without the consumers' affirmative consent.

81.     Defendants recognize the materiality of the tracking software in Defendants' Prospectus, as set forth above, by admitting that if the public knew the truth, it could significantly impact sales of its Smart TVs and its ability to profit from the sale of users' personally identifiable information to third parties.

82.     Plaintiff and Class members were unaware of the existence of the tracking software on Vizio's Smart TVs at the time of the purchases.  Had they known, Plaintiff and Class members would not have purchased Vizio Smart TVs, or would have paid less for them.

83.     Defendants' conduct directly and proximately caused Plaintiff and Class members actual monetary damages in the form of the purchase price of the Smart TVs and damages as a result of the unauthorized to, and dissemination of, their personal information.

84.     Plaintiff and Class members seek damages, including punitive damages, reasonable attorneys' fees, and costs as a result of Defendants' fraudulent omissions.

### FIFTH CLAIM FOR RELIEF
### Negligent Omission
### (On Behalf of Plaintiff and the National Class, or, in the alternative, the Illinois Class)

85.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

86.     Defendants negligently concealed, suppressed, or omitted a material fact.   To wit, Defendants concealed the existence of the Smart Interactivity tracking software that tracks and collects the users' information and viewing history as well as information from other devices that are connected to the user's Wi-Fi network.

87.     Defendants were under a duty to Plaintiff and Class members to disclose that the Smart TVs contained the pre-enabled tracking software due to the following reasons:

88.     Vizio, as the manufacturer, was in a superior position to know of the existence of the pre-enabled tracking software on Vizio Smart TVs;

89.     Both the Video Protection Privacy Act and the Electronic Communications Privacy Act prohibit the collection, interception, disclosure, and/or transmission of the information at issue without the prior, informed consent of Plaintiff and the Class members or the opportunity, given in a clear and conspicuous manner, to prohibit the disclosure;

90.     Plaintiff and Class members could not reasonably have been expected to learn or discover that Defendants included pre-enabled tracking software on the Smart TVs;

91.     Defendants should have known that Plaintiff and Class members could not reasonably have been expected to learn or discover that Defendants included pre-enabled tracking software on its TVs, and in fact, Defendants took steps to actively conceal the tracking software; and

92.     Defendants should have known that the existence and nature of the pre-enabled software was a material fact that influenced the purchasing decision of Plaintiff and Class members.

93.     Defendants negligently concealed and/or suppressed information about the tracking software.  Defendants should have known that Plaintiff and Class members would not have purchased the Smart TVs for the price they paid if Defendants had disclosed the existence of pre-enabled tracking software.

94.     Defendants recognized the materiality of the tracking software in Vizio's Prospectus, as set forth above, by admitting that if the public knew the truth, it would significantly impact sales of its Smart TVs and its ability to profit from the sale of users' personally identifiable information to third parties.

95.     Plaintiff and Class members were unaware of the existence of the tracking software on Vizio's Smart TVs at the time of the purchases.  Had they

known, Plaintiff and Class members would not have purchased Vizio Smart TVs or would have paid less for them.

96.     Defendants' conduct directly and proximately caused Plaintiff and Class members actual monetary damages in the form of the purchase price of the Smart TVs and damages as a result of the unauthorized access.

97.     On behalf of herself and the Class, Plaintiff seeks damages, including expenses, attorneys' fees, and costs, as a result of Defendants' negligence.

## PRAYER FOR RELIEF

Plaintiff, on behalf of himself and on behalf of the proposed classes, request that the Court:

a.     Certify this case as a class action, appoint Plaintiff as class representative and appoint Plaintiff's counsel to represent the classes;

b.     Award Plaintiff and Class members appropriate relief, including actual damages, punitive damages, and statutory damages;

d.     Award equitable, injunctive, declaratory relief as appropriate;

e.     Award all costs, including experts' fees and attorneys' fees, and the costs of prosecuting this action;

f.     Award pre-judgment and post-judgment interest as prescribed by law; and

g.     Grant additional legal or equitable relief as the Court may find just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: May 17, 2016                    Respectfully submitted,

**GLANCY PRONGAY & MURRAY LLP**


By: *s/ Marc L. Godino*
Lionel Z. Glancy
Marc L. Godino
Mark S. Greenstone
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile:  (310) 201-9160
E-mail: info@glancylaw.com

*Counsel for Plaintiff*